**ORIGINAL**

PILLSBURY WINTHROP LLP
Susan J. Kohlmann (SK-1855)
Karen B. Dine (KD-0546)
David Keyko (DK-3386)
1540 Broadway
New York, NY 10036
(212) 858-1000

MFY LEGAL SERVICES, INC.
Jeanette Zelhof (JZ-0639)
Lycette Nelson (LN-5606)
Of Counsel to Lynn Kelly
299 Broadway
New York, NY 10007
(212) 417-3717

CV 04 4077

GLASSER, J.

GOLD, M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNETTE CORTIGIANO, RANDALL READE, and ALFRED ROBERTS, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>-against-<br><br>OCEANVIEW MANOR HOME FOR ADULTS and JOSEPH ROSENFELD, OPERATOR AND ADMINISTRATOR, OCEANVIEW MANOR HOME FOR ADULTS,<br><br>*Defendants*. | Civ A. No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## PRELIMINARY STATEMENT

1.     This action is brought to vindicate the rights of mentally disabled

individuals who currently reside or will reside at Oceanview Manor Home for Adults

("Oceanview") against whom defendants have discriminated or are discriminating by

denying them access to benefits and services by reason of their disability. Defendants

1

have denied plaintiffs use of and control over their personal funds; subjected them to ongoing invasions of their privacy; verbally abused and humiliated them; and retaliated against them when they attempted to exercise their rights.

2. All of the plaintiffs herein are residents of Oceanview. Oceanview is a type of adult care facility known as an adult home, which provides room, board, and a variety of services to residents.

3. All of the plaintiffs are recipients of Supplemental Security Income ("SSI") and pay the home a rate fixed by the State of New York for SSI recipients, in exchange for room, board, housekeeping and a variety of other services an adult home operator is required to provide. In addition to SSI, plaintiffs who have a work history receive a small amount in Social Security Disability Insurance ("SSDI").

4. Recognizing that SSI recipients need personal spending money in addition to the rent paid to the adult home, the New York State Legislature established a mandatory Personal Needs Allowance ("PNA") from a state supplement to the federal SSI, the amount of which is set by the legislature on an annual basis. Residents use their allowance for personal items not provided by the home such as clothing, toiletries, newspapers, cigarettes, transportation and snacks.

5. Defendants maintain policies and practices by which they condition plaintiffs' receipt of their allowance on the performance of specific tasks and activities. Such policies and practices violate plaintiffs' rights to these benefits and limit their independence. By conditioning plaintiffs' receipt of their allowance on their behavior, defendants illegally use plaintiffs' personal funds to control both plaintiffs' and other residents' behavior. Residents in the home fear that the home will withhold their

allowance if they do not go to a voluntary day program, shower when the home wants them to, accept medical services which they have the right to refuse, or adhere to the home's rules.

6.      The policy of both the United States and the State of New York is to encourage independence and integration of people with disabilities. But, in the setting of an adult home, plaintiffs have very little control over most aspects of their lives. Living in shared rooms, they have little privacy. They do not choose when, what, or with whom they eat. One of the few areas of their lives in which plaintiffs can exercise some control and independence is in how they spend the very small allowance to which they are entitled every month. They might choose to get a haircut, buy an item of clothing, travel to visit a relative, or go out for an inexpensive meal. Being able to exercise this minimal amount of choice helps plaintiffs maintain their autonomy and independence.

7.      Defendants' policies and practices, however, are designed to control, coerce and punish plaintiffs' behavior. Defendants' policies and practices violate both the letter and the spirit of federal and state laws and policy protecting people with disabilities.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights, and plaintiffs request that this court exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) for related state claims.

3

9.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as it is the judicial district in which the events or omissions giving rise to the claims occurred.

## THE PARTIES

### Plaintiffs

10.     Plaintiff Annette Cortigiano ("Plaintiff Cortigiano") is a 47-year-old mentally disabled resident of Oceanview. She has lived at Oceanview since April 2003. Plaintiff Cortigiano is a recipient of SSI and SSDI.

11.     Plaintiff Randall Reade ("Plaintiff Reade") is a 36-year-old mentally disabled resident of Oceanview. He has lived at Oceanview since December 2002. Plaintiff Reade is a recipient of SSI and SSDI.

12.     Plaintiff Alfred Roberts ("Plaintiff Roberts") is a 54-year-old, mentally disabled resident of Oceanview. He has lived at Oceanview since October 2003. Plaintiff Roberts is a recipient of SSI.

### Defendants

13.     Defendant Oceanview is an adult home located at 3010 W. 33rd Street, Brooklyn, New York 11224. It is a for-profit business.

14.     Adult homes are a type of adult care facility that provide long-term residential care, including room, board, housekeeping, personal care, supervision and social services, to promote the social, physical and mental well-being of its residents, including protecting residents' health and safety.

15.     As an adult care facility, Oceanview is licensed by the New York State Department of Health ("DOH") and subject to New York State law and regulations.

4

16. At all times relevant to this Complaint, Defendant Oceanview was an adult care facility subject to New York State law and regulations.

17. On information and belief, Oceanview houses approximately 176 residents, many of whom suffer mental disabilities.

18. Defendant Joseph Rosenfeld ("Defendant Rosenfeld") is the operator and administrator of Oceanview.

19. Defendant Rosenfeld holds an operating certificate to operate the home pursuant to N.Y. SOC. SERV. LAW §§ 460-a – 460-f, 461-b (McKinney 2004) ("New York's Social Services Law" or "SSL").

20. Defendant Rosenfeld is solely responsible for the operation of Oceanview and is required to provide a program of services, care and supervision protecting the rights of residents, promoting the physical and mental well-being of residents, and complying with SSL Sections 460 through 461-h and the implementing regulations at N.Y. COMP. CODES R. & REGS. tit. 18 SOC. SERV. (B-1), §§ 485-487 (2004) ("NYCRR").

21. Pursuant to New York's Social Services Law and its implementing regulations, defendants are required to provide each resident with an admission agreement.

22. The Oceanview admission agreement states: "The parties to this agreement understand that this facility is a Residential Care facility providing lodging, room, board, housekeeping, supervision, and personal care services to the resident in accordance with the New York State Social Services Law and the Regulations of the New York State Department of Health."

23. Defendant Rosenfeld is also the administrator of Oceanview.

5

24.     As administrator, Defendant Rosenfeld is responsible for the supervision
of the facility, operation of the facility in compliance with law and regulations,
supervision of staff, and supervision of resident services.  NYCRR tit. 18 § 487.9(c)(8).

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs seek to represent the class of individuals who currently reside or
will reside at Oceanview, who are mentally disabled, and who receive SSI. Plaintiffs seek
class certification pursuant to Federal Rules of Civil Procedure 23.

26.     Plaintiffs seek certification as a class for the following reasons:

a.     Oceanview houses approximately 176 individuals, the great
majority of whom are mentally disabled and receive SSI. The class of mentally disabled
SSI recipients who reside or will reside at Oceanview is so numerous as to make joinder
of all individual members impracticable.

b.     The questions of law and fact are common to the whole class.  All
questions of law are common to members of the class.  Factual differences, to the extent
they exist, relate to damages, not to the injunctive and declaratory relief for which class
certification is sought.

c.     The claims of the named individuals are typical of those of the
class as a whole.

d.     Plaintiffs will fairly and adequately protect the interests of the
class.  The interests of the named plaintiffs and of other members of the class coincide in
all respects.

e.     Because this action addresses widespread practices and policies
used by defendants, class certification is appropriate under Fed. R. Civ. P. Rule 23(b)(2).

Defendants' practices are generally applicable to the class and cause injury to the class as a whole. Plaintiffs seek injunctive and declaratory relief on behalf of the class.

   f. The questions of law and fact common to the class predominate over any questions affecting only individual members.

## STATEMENT OF FACTS

### Background Information

  27. Plaintiffs are all recipients of SSI. Upon information and belief, plaintiffs Cortigiano and Reade also receive SSDI.

  28. SSI and SSDI are programs administered by the federal Social Security Administration.

  29. Defendant Oceanview is an adult care facility certified by the New York State Department of Health.

  30. The State of New York provides a supplement to the federal SSI rate to SSI recipients living in adult care facilities to pay for the cost of services provided by the facility.

  31. The SSI payment to an individual residing in an adult care facility in New York City is $999 per month in 2004. Out of this monthly payment, an SSI recipient living in an adult home receives an allowance of $127.00 per month for his personal needs. This rate is set by the New York State Legislature annually. The remaining $872 per month is the rate for room, board and services for an SSI recipient living in an adult care facility. Adult home residents who are recipients of both SSI and SSDI receive an additional $20 per month, for a total allowance of $147.00 per month.

7

32.     The Personal Needs Allowance ("PNA") is a fund made directly available to SSI residents of adult homes for their own use in obtaining clothes, personal hygiene items, and other supplies and services not otherwise provided by the adult home (SSL §131-o(2)). The $127.00 monthly PNA is the only money directly available to SSI recipients living in adult homes and the only part of their monthly SSI payment over which they have any discretion or control in how and when they receive it and how they spend it.

33.     Upon information and belief, all plaintiffs receive $127.00 per month in 2004 as their personal needs allowance from SSI. Those class members who receive SSDI in addition to SSI receive an additional $20 per month for a total of $147.00 per month.

34.     A representative payee is a person designated by the Social Security Administration to receive a beneficiary's SSI check and to use the money for the benefit of the beneficiary.

35.     Upon information and belief, because plaintiffs are impoverished and do not have their own bank accounts, plaintiffs who are (or were) their own payees negotiate their monthly checks to Oceanview and maintain accounts with Oceanview for the balance of their monthly checks, which is the amount of their monthly PNA.

36.     Upon information and belief, defendants and their agents and employees distribute allowances from the business office at Oceanview. Although the hours posted for the business office indicate that it is open between the hours of 10:00 AM and 2:00 PM Monday through Friday, defendants distribute allowances to plaintiffs only at specific times of the day and allow plaintiffs access to their accounts only at those times.

8

If plaintiffs are not at the home or available to stand on line at the time defendants determine they will receive their allowance, they do not receive their allowance that day.

37.     Upon information and belief, some plaintiffs voluntarily attend continuing day treatment programs. For those plaintiffs whose receipt of their allowance defendants condition on attendance at a day treatment program, defendants require that they sign a receipt for their allowance in the morning, but do not give them their money until they return from the program.

38.     Upon information and belief, because the business office is not open on the weekend, some plaintiffs sign for receipt of their allowance for Friday, Saturday and Sunday on Friday but receive their allowance for Saturday and Sunday from the person who distributes medication on those days.

## Plaintiff Cortigiano

39.     Upon information and belief, from April 2003, when she moved to Oceanview, until April 12, 2004, Plaintiff Cortigiano was her own payee.

40.     Upon information and belief, in February or March 2004, defendants filed an application with the Social Security Administration to become Plaintiff Cortigiano's representative payee.

41.     Upon information and belief, on March 29, 2004, one of defendants' employees asked Plaintiff Cortigiano to sign a form designating Oceanview as her representative payee. Plaintiff Cortigiano refused.

42.     Upon information and belief, on March 30, 2004, another Oceanview employee told Plaintiff Cortigiano that if she did not sign the form, she would not get any money from her account. Plaintiff Cortigiano signed the form.

9

43.     Upon information and belief, Defendant Oceanview became Plaintiff
Cortigiano's representative payee on April 12, 2004.

44.     Upon information and belief, Plaintiff Cortigiano, as a recipient of both
SSI and SSDI, was entitled to a monthly allowance of $144 during 2003 and is entitled to
a monthly allowance of $147 during 2004.

45.     Upon information and belief, after Plaintiff Cortigiano moved to
Oceanview and established an account for her personal allowance with the home, when
she sought to withdraw funds from her account, she was told that she could only receive
$35 per week.

46.     Upon information and belief, defendants continued to deny Plaintiff
Cortigiano access to the full amount of her monthly personal allowance, distributing it in
amounts of $35 per week.

47.     Upon information and belief, defendants and their agents regularly
inquired into Plaintiff Cortigiano's expenditures and made her justify her need for more
money if she asked for it.

48.     Upon information and belief, Plaintiff Cortigiano requested on many
occasions that defendants allow her to have the full amount of her allowance or to
withdraw larger sums from it if she needed them.  Plaintiff Cortigiano requested
additional funds for such personal expenditures as going to a beauty salon and visiting
her son in Staten Island.

49.     Upon information and belief, defendants refused to allow Plaintiff
Cortigiano to withdraw more than the amount they had determined she should receive.

50.     Upon information and belief, in January, 2004, defendants informed Plaintiff Cortigiano that she was being put on a budget of $5 per day.  Upon information and belief, defendants told Plaintiff Cortigiano that this was in response to her not having attended her day treatment program.

51.     Upon information and belief, defendants require Plaintiff Cortigiano to be at the home at 3:00 PM every day and to wait on line with other residents to receive the PNA defendants disburse to her on a daily basis.

52.     Upon information and belief, defendants allow Plaintiff Cortigiano almost no control over her own money.  In order to purchase necessary items or services, Plaintiff Cortigiano must tell defendants and their agents and employees what she needs and defendants or their agents or employees either go to the store or send other residents to purchase items for her.  Plaintiff Cortigiano is not given any choice about who makes purchases for her.

53.     Upon information and belief, Plaintiff Cortigiano attends a continuing day treatment program at the Institute for Community Living.

54.     Upon information and belief, attendance at this program is voluntary.

55.     Upon information and belief, defendants, their agents and/or employees call Plaintiff Cortigiano's continuing day treatment program to verify that she is there and do not give her her allowance until she returns from her program in the afternoon.

56.     Upon information and belief, defendants do not give Plaintiff Cortigiano her allowance if she does not go to the program.

57.     Upon information and belief, Plaintiff Cortigiano signs for her money in the morning but only receives it after she returns from her continuing day treatment program.

58.     In a letter dated February 10, 2004, Plaintiff Cortigiano, through her representatives, MFY Legal Services, demanded that defendants immediately cease to withhold her PNA and to condition her receipt of her PNA on her attendance at a day treatment program and that defendants distribute the full amount of her allowance to her at the beginning of the month.

59.     Upon information and belief, when Plaintiff Cortigiano requested that defendants cease withholding her personal allowance and give her access to the full PNA, defendants, their agents and/or employees threatened that they would file an application to become her representative payee.

60.     Upon information and belief, when Plaintiff Cortigiano told Defendant Rosenfeld that she would establish a direct deposit account rather than signing her SSI check over to Oceanview, he threatened to evict her if she did so.

**Plaintiff Reade**

61.     Upon information and belief, Plaintiff Reade has been a resident of Oceanview since December 2002.

62.     Upon information and belief, Plaintiff Reade is and at all times relevant to this Complaint was his own payee.

63.     Upon information and belief, defendants condition Plaintiff Reade's receipt of his allowance on his taking a shower.

12

64.     Upon information and belief, defendants do not allow Plaintiff Reade to withdraw more than $5 per day from his account.

65.     Upon information and belief, Plaintiff Reade signs for $15 on Friday but only receives $5. Because the business office is closed on weekends, he receives $5 on Saturday and $5 on Sunday from the staff person who dispenses medications.

66.     Upon information and belief, although Plaintiff Reade has money in his account, he is afraid to ask for more money when he needs it to make purchases because he is afraid defendants, their agents and/or employees will verbally abuse him.

67.     Upon information and belief, defendants allow Plaintiff Reade very little control over his spending. When he wants to purchase an item such as a pair of shoes, rather than giving him money from his account to go to the store and buy what he wants, defendants and their agents and/or employees go to the store and purchase the item for him.

**Plaintiff Roberts**

68.     Upon information and belief, since he moved to Oceanview, Plaintiff Roberts has received only $5 per day of his allowance.

69.     Upon information and belief, prior to moving to Oceanview in October 2003, Plaintiff Roberts had been a resident of another adult home, King Solomon Manor; he moved to Oceanview due to the closure of King Solomon Manor.

70.     Upon information and belief, when he lived at King Solomon Manor and King Solomon Manor was his representative payee, Plaintiff Roberts received his full monthly allowance on the 3rd of the month.

13

71.     Upon information and belief, Plaintiff Roberts attends a day treatment program and receives mental health services at Federation Employment and Guidance Services ("FEGS"), a licensed mental health provider.

72.     Upon information and belief, defendants condition Plaintiff Roberts' receipt of his allowance on his attendance at a day treatment program.

73.     Upon information and belief, attendance at the FEGS program is voluntary.

74.     Upon information and belief, Plaintiff Roberts has had his allowance withheld on days when he did not attend the program at FEGS. However, because he is not scheduled to go to his program on Wednesday, he does receive his allowance that day.

75.     Upon information and belief, if Plaintiff Roberts does not attend his day treatment program on Friday, he does not receive any money for the weekend.

76.     Upon information and belief, defendants and their agents and employees inquire whether Plaintiff Roberts has showered and threaten to withhold his allowance if he does not do so.

77.     Upon information and belief, defendants would not give Plaintiff Roberts money from his account to purchase a winter coat when he needed one.

78.     Upon information and belief, when Plaintiff Roberts does need an item of clothing, defendants, their agents and/or employees go to the store for him and purchase items out of his PNA without allowing him any choice. When Plaintiff Roberts needed summer clothing, rather than giving him money to purchase shirts of his choice, defendants' agents and/or employees went to the store and used Plaintiff Roberts' money

14

to purchase a t-shirt containing an image Plaintiff Roberts found offensive. He was left with a shirt he did not want and without the funds to purchase a shirt of his choice.

79.     In a letter to Defendant Rosenfeld dated February 10, 2004, Plaintiff Roberts, through his representative MFY Legal Services, demanded that defendants cease their illegal practice of conditioning his receipt of his allowance on his attendance at a day treatment program. Defendants did not change their practices in response to Plaintiff Roberts' request and have continued to deny him his allowance if he does not attend the program.

80.     Upon information and belief, when Plaintiff Roberts exercised his rights by complaining about defendants' actions and omissions, defendants and their agents and employees responded that they would not change their policies and practices, even if plaintiff exercised his right to seek a legal remedy and even if the home had to close as a result.

## AS AND FOR A FIRST CAUSE OF ACTION BASED ON VIOLATION OF 29 U.S.C. § 794, SECTION 504 OF THE REHABILITATION ACT

81.     Plaintiffs repeat and re-allege paragraphs 1 through 80 as if fully set forth herein.

82.     Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794 *et seq.*, provides that "[n]o otherwise qualified individual with a disability" shall "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

83.     Plaintiffs have mental impairments that constitute or result in substantial impediments to employment and/or mental impairments that substantially limit one or

more major life activities.  Plaintiffs are therefore qualified individuals with disabilities under Section 504 of the Rehabilitation Act.

84.     Because Defendant Oceanview is a corporation, partnership, or other private organization or an entire sole proprietorship which is primarily engaged in the business of providing housing, all of its operations constitute a "program or activity" under 29 U.S.C. § 794(b)(3)(A).

85.     Defendant Oceanview is a private entity to which federal assistance is extended in the form of SSI and SSDI payments.  Defendant Oceanview is therefore a recipient of federal financial assistance as defined in 29 U.S.C. § 794(b)(3)(A).

86.     Defendant Rosenfeld, as operator of Oceanview, is a person to whom federal assistance is extended in the form of SSI and SSDI payments.  Defendant Rosenfeld is therefore a recipient of federal financial assistance as defined in 29 U.S.C. § 794(b)(3)(A).

87.     Defendants are subject to the nondiscrimination requirements of Section 504 of the Rehabilitation Act.

88.     Defendants' policies and practices deny plaintiffs the benefits of a program or activity by improperly withholding personal needs allowances to which plaintiffs are entitled from plaintiffs' SSI checks.

89.     Defendants' policies and practices limit plaintiffs' access to benefits by conditioning plaintiffs' receipt of their statutorily mandated personal needs allowance on the performance of specific activities.

90.     Defendants have failed and continue to fail to make reasonable accommodations for plaintiffs' disabilities by refusing to provide adequate and

appropriate supervision, case management and personal care services to aid plaintiffs with money management, treatment compliance, and personal hygiene issues arising from their disabilities. Instead, defendants resort to punitive and coercive measures to force plaintiffs to comply with defendants' rules.

91.     Defendants and their agents and employees discriminate against plaintiffs by reason of their disabilities by subjecting them to ongoing humiliating, degrading and abusive treatment.

92.     As a result of defendants' actions and omissions, plaintiffs have been and continue to be injured and have suffered damages.

## AS AND FOR A SECOND CAUSE OF ACTION BASED ON VIOLATION OF 42 U.S.C. § 12101 *et seq.*, AMERICANS WITH DISABILITIES ACT

93.     Plaintiffs repeat and re-allege paragraphs 1 through 92 as if fully set forth herein.

94.     The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, was enacted to provide a legal redress to all disabled individuals who suffer discrimination by, *inter alia*, being relegated to lesser services, benefits, programs or other opportunities based on the fact that they are disabled.

95.     Title III of the ADA and its implementing regulations prohibit, *inter alia*, discrimination against any individual based on his/her disability by any person who owns, leases or leases to, or operates a place of public accommodation.

96.     Upon information and belief, Oceanview is a facility operated by a private entity whose operations affect commerce. Oceanview provides lodging and contains more than five rooms for rent. Oceanview constitutes a public accommodation under Title III and its implementing regulations. 28 C.F.R. § 36.104.

17

97.     Defendant Oceanview is subject and at all times relevant to this Complaint was subject to the nondiscrimination requirements of Title III of the ADA and its implementing regulations.

98.     Upon information and belief, Defendant Rosenfeld owns and operates Oceanview. Defendant Rosenfeld constitutes a private entity under Title III of the ADA and its implementing regulations because he is a person or entity other than a public entity and he owns, leases (or leases to), or operates a place of public accommodation. 28 C.F. R. § 36.104.

99.     Defendant Rosenfeld is subject and at all times relevant to this Complaint was subject to the nondiscrimination requirements of Title III of the ADA and its implementing regulations.

100.    All plaintiffs suffer, and at all times relevant to this Complaint suffered, from mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

101.    There is, and at all times relevant to this Complaint was, a record of plaintiffs' mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

102.    Upon information and belief, all defendants regard, and at all times relevant to this Complaint regarded, plaintiffs as having mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

103.    Upon information and belief, plaintiffs constitute qualified individuals with disabilities pursuant to Title III of the ADA and its implementing regulations, and at

18

all times relevant to this Complaint, constituted qualified individuals with disabilities pursuant to Title III of the ADA and its implementing regulations.

104.    Defendants knew or should have known that plaintiffs had mental disabilities.

105.    Defendants discriminated against plaintiffs based on their disability by imposing improper terms and conditions on plaintiffs' receipt of benefits and services.

106.    Defendants have failed and continue to fail to make a reasonable accommodation for plaintiffs' disabilities by failing to provide adequate and appropriate supervision, case management and personal care services to aid plaintiffs with money management and personal hygiene issues arising from their disabilities rather than using punitive and coercive measures.  Under New York's Social Services Law and the implementing regulations and under the admissions agreements in effect between plaintiffs and defendants, defendants are required to provide services to aid plaintiffs with activities of daily living, including monitoring and guidance to assist plaintiffs in the performance of basic money management (NYCRR tit. 18 § 487.7(d)(1)(iv)(d)) and in the performance of personal hygiene and grooming activities (NYCRR tit. 18 § 487.7(d)(1)(iv)(b)).

107.    Defendants have discriminated and continue to discriminate against plaintiffs based on their disabilities by subjecting them to humiliating, degrading and abusive treatment.

## AS AND FOR A THIRD CAUSE OF ACTION BASED ON VIOLATION OF NEW YORK SOCIAL SERVICES LAW § 131-o

108.    Plaintiffs repeat and re-allege paragraphs 1 through 107 as if fully set forth herein.

109.    New York Social Services Law § 131-o(1)(b) provides that each individual receiving residential care and who is receiving benefits under the program for additional state payments is entitled to receive a PNA. In 2002, the statutorily mandated PNA was $122.00 per month; in 2003, it was $124.00 per month; in 2004, it is $127.00 per month.

110.    Adult home operators are required to make the PNA directly available to SSI recipients living in their home for the recipient's own use in obtaining clothes, personal hygiene items, and other supplies and services for his personal use not otherwise provided by the residential facility. SSL § 131-o(2).

111.    Any waiver of the right to a personal allowance by an individual entitled to it is void. *Id.*

112.    Under SSL § 131-o(3), "[a]ny individual who has not received or been able to control personal allowance funds to the extent and in the manner required by this section may maintain an action in his own behalf for recovery of any such funds, and upon a showing that the funds were intentionally misappropriated or withheld to other than the intended use, for recovery of additional punitive damages in an amount equal to twice the amount misappropriated and withheld."

113.    Defendants have violated SSL § 131-o by failing to make plaintiffs' PNA available to them, by not giving plaintiffs control over their money for their own use and by intentionally withholding plaintiffs' PNA as punishment for not attending a continuing day treatment program, for not showering, or for breaking the home's rules.

114.    Plaintiffs are entitled to recover the PNA monies withheld from them.

20

115.    Plaintiffs are entitled to double punitive damages under SSL § 131-o(3) in an amount to be determined due to defendants' intentional withholding of their personal allowances.

## AS AND FOR A FOURTH CAUSE OF ACTION BASED ON BREACH OF CONTRACT

116.    Plaintiffs repeat and re-allege paragraphs 1 through 115 as if fully set forth herein.

117.    Under SSL § 461-c, defendants are required to execute an admission agreement with every applicant for admission.  Plaintiffs signed or should have signed an admission agreement with defendants Oceanview and Rosenfeld at the time of their admission, stating, *inter alia*, that defendants must abide by New York's Social Services Law and the implementing regulations and treat residents in accordance with the rights and protections afforded thereunder.

118.    Under the admission agreement between defendants and plaintiffs, defendants are required to provide specific services, including supervision, case management and personal care, to plaintiffs.

119.    The New York Social Services Law accords residents of adult care facilities specific rights as residents of such facilities.  SSL § 461-d(3) provides that resident rights and responsibilities shall include, but not be limited to:

(a) "the right to independent personal decisions and knowledge or available choices."  The facility has the responsibility to "encourage and assist [the residents] in the fullest possible exercise of these rights."  SSL § 461-d(3)(a).

(b) the right to present grievances on behalf of himself or herself or others to the facility's staff or administrator, to governmental officials, or to any person without fear of reprisal. SSL § 461-d(3)(c).

(c) the right to manage his or her own financial affairs. SSL § 461-d(3)(d).

(d) the right to have privacy in treatment and caring for personal needs. SSL § 461-d(3)(e).

(e) the right to have privacy in the treatment of personal, social, financial and medical records, and security in storing personal possessions. SSL § 461-d(3)(f).

(f) the right to receive courteous, fair and respectful care and treatment. SSL § 461-d(3)(g).

120.    Defendants have violated SSL § 461-d(3)(a) and breached their admissions agreements with plaintiffs by not allowing plaintiffs any choice in how they receive and spend their money.  Further, they have failed to encourage and assist plaintiffs in the fullest exercise of their rights to independent personal decisions by controlling their personal funds in ways that limit, rather than increase, their independence.  Defendants have a duty to provide case management services to plaintiffs, which include "such case management services as are necessary to support the resident in maintaining independence of function and personal choice." NYCRR tit. 18 § 487.7(g)(2).

121.    Defendants have violated SSL § 461-d(3)(c) by threatening plaintiffs when they exercised their rights to present grievances.  Plaintiffs Cortigiano and Roberts were verbally threatened when they asked the home to cease its practice of withholding their allowances or placing conditions on their receipt of their allowances.

22

122.     Defendants have violated SSL § 461-d(3)(d) by refusing to allow plaintiffs who are their own representative payees to manage their own finances and by not allowing plaintiffs any autonomy in how their money is distributed or spent. Further, defendants have not provided plaintiffs any help in developing money management skills but have exerted control over their money in a coercive and punitive way. Under NYCRR tit. 18 § 487.7(a), the operator of an adult home is required to provide supervision and case management. Supervision services include "monitoring and guidance to assist residents in performing basic activities of daily living" (NYCRR tit. 18 § 487.7(d)(iv)), including performance of basic money management (NYCRR tit. 18 § 487.7(d)(1)(iv)(d)).

123.     Defendants have violated and continue to violate SSL § 461-d(3)(e) by failing to maintain plaintiffs' privacy regarding treatment by calling plaintiffs' day treatment programs or inquiring into plaintiffs' attendance at the programs and by publicly inquiring about issues related to plaintiffs' personal care.

124.     Defendants have violated and continue to violate SSL § 461-d(3)(f) by failing to respect plaintiffs' privacy in their financial matters by making their budgeting practices and the conditions they attach to plaintiffs' receipt of their allowances public. Defendants distribute allowances in a very public area of the facility, make plaintiffs stand on line at a specified time to receive their money, and make comments to plaintiffs about the conditions attached to their receipt of their money within earshot of other residents.

125.     Defendants have violated SSL § 461-d(3)(g) by subjecting plaintiffs to humiliating and degrading treatment by publicly inquiring whether they have taken

23

showers and having their agents and employees verify that plaintiffs have taken showers by opening the doors to their rooms or inspecting their bathrooms after plaintiffs have showered.

126.    Further, defendants have breached their admissions agreements with plaintiffs by violating the implementing regulations of the Social Services Law regarding when resident accounts must be available.  NYCRR tit. 18 § 487.6(b)(2) provides that "[i]n the event that the resident negotiates the full SSI . . . check to the operator, distribution of the personal allowance account shall be made to the resident within two banking days of the transaction."  Defendants violated § 487.6(b)(2) with respect to plaintiffs who are or were their own representative payees and who negotiated their checks to defendants by distributing their personal needs allowances in a piecemeal fashion over the course of the month rather than making the full amount available to them within two banking days of their negotiating their checks to the home.

127.    Pursuant to NYCRR tit. 18 § 487.6(c)(5), "[r]esidents shall have access to personal allowance accounts at least four hours daily, Monday through Friday."  Defendants have violated NYCRR tit. 18 § 487.6(c)(5) by allowing plaintiffs access to their accounts only at specified hours of the day and for less than four hours a day.  Defendants' practice requiring that plaintiffs be at Oceanview to stand on line for their allowances at a specific time of day limits their independence and choice by restricting their ability to travel outside the home.

128.    Defendants' case management responsibilities further include assisting each resident to maintain family and community ties and to develop new ones (NYCRR tit. 18 § 487.7(g)(iv)) and encouraging resident participation in facility and community

activities (NYCRR tit. 18 § 487.7(g)(v)). Defendants' policies and practices limit, rather than encourage and assist plaintiffs in maintaining family and community ties and participating in community activities by limiting their ability to travel, to make telephone calls, and to take part in activities outside the home, including shopping, eating out, and any other activities that require spending money. In some instances, defendants do not even give plaintiffs the ability to go out and make their own purchases, but instead make the purchases for them or have other residents do so.

129.    Defendants have breached their admissions agreements with plaintiffs by violating New York Social Services Law § 461(d) and implementing regulations. Plaintiffs have been and continue to be injured by defendants' breach and have suffered and continue to suffer damages.

### AS AND FOR A FIFTH CAUSE OF ACTION BASED ON BREACH OF FIDUCIARY DUTY

130.    Plaintiffs repeat and re-allege paragraphs 1 through 129 as if fully set forth herein.

131.    Defendants offer residents of their facility the option of maintaining an account with the facility. By maintaining such accounts for plaintiffs and acting as the representative payee for plaintiffs Cortigiano and Roberts, defendants owe plaintiffs a duty to act in good faith, trust and candor towards them.

132.    New York Social Services Law § 461-d(6) specifies that "[a]n operator or employee of a residence for adults, adult home ...or any other entity which is a representative payee of a resident of such facility pursuant to designation by the social security administration or which otherwise assumes management responsibility over the funds of a resident shall maintain such funds in a fiduciary capacity to the resident."

133.    Defendants have violated this fiduciary duty by withholding plaintiffs'
money, by refusing to give plaintiffs control over their money, by arbitrarily changing the
terms under which plaintiffs receive funds from their PNA, and by disbursing plaintiffs'
PNA in a punitive and coercive manner rather than for plaintiffs' benefit.

134.    Plaintiff's have been and continue to be injured by defendants' breach and
have suffered and continue to suffer damages.

## AS AND FOR AN SIXTH CAUSE OF ACTION BASED ON VIOLATION OF
## EXECUTIVE LAW ARTICLE 15
## NEW YORK STATE HUMAN RIGHTS LAW

135.    Plaintiffs repeat and re-allege paragraphs 1 through 134 as if fully set forth
herein.

136.    New York's Human Rights Law, N.Y. EXEC. LAW § 290 *et seq.*,
(McKinney 2004), was enacted to "assure that every individual within this state is
afforded an equal opportunity to enjoy a full and productive life" and to address "the
failure to provide such equal opportunity, whether because of discrimination, prejudice,
intolerance or inadequate education, training, housing or health care." N.Y. EXEC. LAW §
290(3).

137.    Plaintiffs are individuals with disabilities as defined in N.Y. EXEC. LAW
§ 292(21). Plaintiffs have a mental impairment resulting from anatomical, physiological,
genetic or neurological conditions which prevents the exercise of a normal bodily
function or is demonstrable by medically accepted clinical or laboratory diagnostic
techniques; and/or a record of such an impairment; and/or a condition regarded by others
as such an impairment.

138.    New York's Human Rights Law prohibits unlawful discriminatory practices by the "owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof." N.Y. EXEC. LAW § 296(5)(a).

139.    Defendant Oceanview is a "housing accommodation" as defined in the Human Rights Law. N.Y. EXEC. LAW § 292(10).

140.    Defendant Rosenfeld, as the operator of Oceanview, is a person having the right to sell, rent or lease a housing accommodation and is therefore subject to the non-discrimination requirements of the Human Rights Law. NYS Executive Law § 296(5)(a).

141.    New York's Human Rights Law provides that it shall be an unlawful discriminatory practice "[t]o discriminate against any person because of ... disability ... in the terms, conditions or privileges of sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith." N.Y. EXEC. LAW § 296(5)(a)(2).

142.    Defendants provide housing accommodations to plaintiffs and furnish services to plaintiffs in conjunction with their housing.

143.    Defendants discriminated against plaintiffs in the furnishing of services in connection with a housing accommodation by imposing conditions on their receipt of services.

144.    As a result of defendants' acts and omissions, plaintiffs have been and continue to be injured and have suffered and continue to suffer damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION BASED ON VIOLATION OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

145.    Plaintiffs repeat and re-allege paragraphs 1 through 144 as if fully set forth herein.

146.    The civil rights provisions of the Administrative Code of the City of New York (N.Y.C. Admin. Code § 8-101 *et seq.*) were enacted to eliminate prejudice, intolerance, bigotry, and discrimination and bias-related violence and harassment. N.Y.C. Admin. Code § 8-101.

147.    Under N.Y.C. Admin. Code § 8-107(5), it is an unlawful discriminatory practice "[t]o discriminate against any person because of such person's actual or perceived ... disability ... in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith."

148.    Oceanview is designed to be occupied as a home, residence or sleeping place of one or more human beings and is therefore a housing accommodation as defined by the N.Y.C. Admin. Code § 8-102(10).

149.    Plaintiffs all have mental or psychological impairments, and/or a history or record of such impairments and are therefore people with disabilities as defined by N.Y.C. Admin. Code § 8-102(16)(a).

150.    Defendants discriminated against plaintiffs in the furnishing of services in connection with a housing accommodation by imposing conditions on their receipt of services and by limiting plaintiffs' access to services.

151.    Defendants knew or should have known that plaintiffs have disabilities.

152.    Defendants failed to make reasonable accommodations for plaintiffs' disabilities as required by N.Y.C. Admin. Code § 8-107(15)(a) by refusing to provide appropriate supervision, case management and personal care services to aid plaintiffs with money management, treatment compliance, and personal hygiene issues arising from plaintiffs' disabilities and instead resorting to punitive and coercive measures.

153.    As a result of defendants' actions and omissions, plaintiffs were injured and suffered damages.

### RELIEF REQUESTED

WHEREFORE, plaintiffs, on their own behalf and on behalf of all those class members similarly situated, respectfully request that this Court issue:

(A) An Order pursuant to Fed. R. Civ. P. 23 (c)(1) certifying this lawsuit as a class action.

(B) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under Section 504 of the Rehabilitation Act and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(C) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under Title III of the Americans with Disabilities Act and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(D) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under NYS Executive Law § 296 and enjoining defendants from discriminating against plaintiffs in violation of these rights.

(E)  Judgment against the defendants declaring that they discriminated against plaintiffs in violation of the Administrative Code of the City of New York and enjoining defendants from discriminating against plaintiffs in violation of these rights.

(F)  Judgment against the defendants declaring that defendants' practice of denying plaintiffs who are or were their own payees their full PNA or in an amount the recipient requests from his or her account is a violation of SSL § 131-o and enjoining them from continuing this practice.

(G)  Judgment against the defendants enjoining them from placing conditions on plaintiffs' receipt of their PNA;

(H)  Judgment against the defendants enjoining defendants' specific performance of their obligations under plaintiffs' admissions agreements, including their obligation to provide case management, supervision, and personal care services to plaintiffs as necessary;

(I)  Judgment awarding plaintiffs compensatory damages in an amount to be determined at trial;

(J)  Judgment awarding plaintiffs punitive damages in an amount to be determined at trial;

(K)  Costs and disbursements to attorneys for plaintiffs;

(L)  Attorneys' fees to attorneys for plaintiffs, MFY Legal Services, Inc. and Pillsbury Winthrop LLP;

(M)  Other relief as the court deems just and proper.

Dated: New York, New York
         September 21, 2004

30

Respectfully submitted,

PILLSBURY WINTHROP LLP

By: _____

Susan J. Kohlmann (SK-1855)
Karen B. Dine (KD-0546)
David Keyko (DK-3386)
1540 Broadway
New York, NY  10036
(212) 858-1000


MFY LEGAL SERVICES, INC.

Jeanette Zelhof (JZ-0639)
Lycette Nelson (LN-5606)
Of Counsel to Lynn Kelly
299 Broadway
New York, NY 10007
(212) 417-3717