PILLSBURY WINTHROP SHAW PITTMAN LLP
Susan J. Kohlmann (SK-1855); Karen B. Dine (KD-0546)
David Keyko (DK-3386)
Carolina A. Fornos (CF-6689); Nancy V. Thornton (NT-5325)
1540 Broadway . New York, NY 10036 . (212) 858-1000

MFY LEGAL SERVICES, INC.
Lycette Nelson (LN-5606); Jeanette Zelhof (JZ-0639)
Of Counsel to Lynn Kelly
299 Broadway . New York, NY 10007 . (212) 417-3717

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNETTE CORTIGIANO, individually, RANDALL REEDE, ALFRED ROBERTS, ANNA COUGHLIN, ANTONIO ILARRAZA, ROGER ROSEN, and ROBERT WAYNE, on behalf of themselves and others similarly situated, | Civ A. No. 04-4077 (ILG) |
| *Plaintiffs,* | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| -against- | **JURY TRIAL REQUESTED** |
| OCEANVIEW MANOR HOME FOR ADULTS and JOSEPH ROSENFELD, OPERATOR AND ADMINISTRATOR, OCEANVIEW MANOR HOME FOR ADULTS, | |
| *Defendants.* | |

## PRELIMINARY STATEMENT

1.       This action is brought to vindicate the rights of mentally disabled individuals who

currently reside or will reside at Oceanview Manor Home for Adults ("Oceanview") against

whom defendants have discriminated or are discriminating by denying them access to benefits

and services by reason of their disability.  Defendants have denied plaintiffs use of and control

over their personal funds; subjected them to ongoing invasions of their privacy; verbally abused and humiliated them; and retaliated against them when they attempted to exercise their rights.

2.      All of the plaintiffs herein are current residents of Oceanview, with the exception of Annette Cortigiano, who brings claims only on her own behalf in this action.  Oceanview is a type of adult care facility known as an adult home, which provides room, board, and a variety of services to residents.

3.      All of the plaintiffs are recipients of Supplemental Security Income ("SSI") and pay the home a rate fixed by the State of New York for SSI recipients, in exchange for room, board, housekeeping and a variety of other services an adult home operator is required to provide.  In addition to SSI, plaintiffs who have a work history receive a small amount in Social Security Disability Insurance ("SSDI").

4.      Recognizing that SSI recipients need personal spending money in addition to the rent paid to the adult home, the New York State Legislature established a mandatory Personal Needs Allowance ("PNA") from a state supplement to the federal SSI, the amount of which is set by the legislature on an annual basis.  Residents use their allowance for personal items not provided by the home such as clothing, toiletries, newspapers, cigarettes, transportation and snacks.

5.      Defendants maintain policies and practices by which they condition plaintiffs' receipt of their allowance on the performance of specific tasks and activities.  Such policies and practices violate plaintiffs' rights to these benefits and limit their independence.  By conditioning plaintiffs' receipt of their allowance on their behavior, defendants illegally use plaintiffs' personal funds to control both plaintiffs' and other residents' behavior.  Residents in the home fear that the home will withhold their allowance if they do not go to a voluntary day program,

2

shower when the home wants them to, accept medical services which they have the right to refuse, or adhere to the home's rules.

6.      Upon information and belief, defendants have further retaliated against the plaintiffs on several occasions by threatening plaintiffs with eviction and/or the withholding of their own funds.

7.      The policy of both the United States and the State of New York is to encourage independence and integration of people with disabilities.  But, in the setting of an adult home, plaintiffs have very little control over most aspects of their lives.  Living in shared rooms, they have little privacy.  They do not choose when, what, or with whom they eat.  One of the few areas of their lives in which plaintiffs can exercise some control and independence is in how they spend the very small allowance to which they are entitled every month.  They might choose to get a haircut, buy an item of clothing, travel to visit a relative, or go out for an inexpensive meal. Being able to exercise this minimal amount of choice helps plaintiffs maintain their autonomy and independence.

8.      Defendants' policies and practices, however, are designed to control, coerce and punish plaintiffs' behavior.  Defendants' policies and practices violate both the letter and the spirit of federal and state laws and policy protecting people with disabilities.

9.      Accordingly, Plaintiffs Reede, Roberts, Coughlin, Ilarraza, Rose, and Wayne (the "Named Plaintiffs") seek declaratory and injunctive relief against defendants and Cortigiano and the Named Plaintiffs seek damages due to defendants' illegal conduct.[1]  The Named Plaintiffs further seek the aforementioned relief for themselves and all others similarly situated.

---

[1]      Throughout this Complaint, the class representatives will be referred to, collectively, as the Named Plaintiffs; Annette Cortigiano, who brings claims only on her own behalf, is not serving as a class representative; and, unless specified otherwise, references to "plaintiffs" refer to all Named Plaintiffs, Annette Cortigiano and each of the members of the plaintiff class.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights, and plaintiffs request that this court exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) for related state claims.

11.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as it is the judicial district in which the events or omissions giving rise to the claims occurred.

## THE PARTIES

**Plaintiffs**

12.     Plaintiff Annette Cortigiano ("Plaintiff Cortigiano") is a 47-year-old mentally disabled person who resided at Oceanview from April 2003 until September 2004.  Plaintiff Cortigiano is a recipient of SSI and SSDI.

13.     Plaintiff Anna Coughlin ("Plaintiff Coughlin") is a 74-year-old mentally disabled resident of Oceanview.  She has lived at Oceanview for 18 years.  Plaintiff Coughlin is a recipient of SSI and Social Security.

14.     Plaintiff Antonio Ilarraza ("Plaintiff Ilarraza") is a 72-year-old mentally disabled resident of Oceanview.  He has lived at Oceanview for more than four years.  Plaintiff Ilarraza is a recipient of SSI.

4

15.     Plaintiff Randall Reede ("Plaintiff Reede")[1] is a 36-year-old mentally disabled resident of Oceanview.  He has lived at Oceanview since December 2002.  Plaintiff Reede is a recipient of SSI and SSDI.

16.     Plaintiff Alfred Roberts ("Plaintiff Roberts") is a 54-year-old mentally disabled resident of Oceanview.  He has lived at Oceanview since October 2003.  Plaintiff Roberts is a recipient of SSI and SSDI.

17.     Plaintiff Roger Rosen ("Plaintiff Rosen") is a 56-year-old mentally disabled resident of Oceanview.  He has lived at Oceanview since 1992.  Plaintiff Rosen is a recipient of SSI.

18.     Plaintiff Robert Wayne ("Plaintiff Wayne") is a 56-year-old mentally disabled resident of Oceanview.  He has lived at Oceanview since 2003.  Plaintiff Wayne is a recipient of SSI.

**Defendants**

19.     Defendant Oceanview is an adult home located at 3010 W. 33rd Street, Brooklyn, New York 11224.  It is a for-profit business.

20.     Adult homes are a type of adult care facility that provide long-term residential care, including room, board, housekeeping, personal care, supervision and social services, to promote the social, physical and mental well-being of its residents, including protecting residents' health and safety.

21.     As an adult care facility, Oceanview is licensed by the New York State Department of Health ("DOH") and subject to New York State law and regulations.

22.     At all times relevant to this Complaint, Defendant Oceanview was an adult care facility subject to New York State law and regulations.

---

[1]     Plaintiff Reede was improperly spelled "Reade" in the original Complaint.

23.    On information and belief, Oceanview houses approximately 176 residents, many of whom suffer mental disabilities.

24.    Defendant Joseph Rosenfeld ("Defendant Rosenfeld") is the operator and administrator of Oceanview.

25.    Defendant Rosenfeld holds an operating certificate to operate the home pursuant to N.Y. SOC. SERV. LAW §§ 460-a – 460-f, 461-b (McKinney 2004) ("New York's Social Services Law" or "SSL").

26.    Defendant Rosenfeld is solely responsible for the operation of Oceanview and is required to provide a program of services, care and supervision protecting the rights of residents, promoting the physical and mental well-being of residents, and complying with SSL Sections 460 through 461-h and the implementing regulations at N.Y. COMP. CODES R. & REGS. tit. 18 SOC. SERV. (B-1), §§ 485-487 (2004) ("NYCRR").

27.    Pursuant to New York's Social Services Law and its implementing regulations, defendants are required to provide each resident with an admission agreement.

28.    The Oceanview admission agreement states: "The parties to this agreement understand that this facility is a Residential Care facility providing lodging, room, board, housekeeping, supervision, and personal care services to the resident in accordance with the New York State Social Services Law and the Regulations of the New York State Department of Health."

29.    Defendant Rosenfeld is also the administrator of Oceanview.

30.    As administrator, Defendant Rosenfeld is responsible for the supervision of the facility, operation of the facility in compliance with law and regulations, supervision of staff, and supervision of resident services.  NYCRR tit. 18 § 487.9(c)(8).

## CLASS ACTION ALLEGATIONS

31.     With the exception of Plaintiff Annette Cortigiano, who brings this action in her individual capacity, the Named Plaintiffs seek to represent the class of individuals who currently reside or will reside at Oceanview, who are mentally disabled, and who receive SSI. The Named Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23.

32.     The Named Plaintiffs seek certification as a class for the following reasons:

       a.     Oceanview houses approximately 176 individuals, the great majority of whom are mentally disabled and, according to New York State's Department of Health, approximately 161 of these individuals received SSI in 2003.  The class of mentally disabled SSI recipients who reside or will reside at Oceanview is so numerous as to make joinder of all individual members impracticable.

       b.     The questions of law and fact are common to the whole class.  All questions of law are common to members of the class.  Factual differences, to the extent they exist, relate to damages, not to the injunctive and declaratory relief for which class certification is sought.

       c.     The claims of the Named Plaintiffs are typical of those of the class as a whole.

       d.     The Named Plaintiffs will fairly and adequately protect the interests of the class.  The interests of the Named Plaintiffs and of other members of the class coincide in all respects.

       e.     Because this action addresses widespread practices and policies used by defendants, class certification is appropriate under Fed. R. Civ. P. Rule 23(b)(2).  Defendants'

7

practices are generally applicable to the class and cause injury to the class as a whole.  The

Named Plaintiffs seek injunctive and declaratory relief on behalf of the class.

## STATEMENT OF FACTS

### Background Information

33.     Plaintiffs are all recipients of SSI.  Upon information and belief, Plaintiffs

Cortigiano, Reede and Roberts also receive SSDI.  Upon information and belief, Plaintiff

Coughlin receives Social Security in addition to SSI.

34.     SSI and SSDI are programs administered by the federal Social Security

Administration.

35.     Defendant Oceanview is an adult care facility certified by the New York State

Department of Health.

36.     The State of New York provides a supplement to the federal SSI rate to SSI

recipients living in adult care facilities to pay for the cost of services provided by the facility.

37.     The SSI payment to an individual residing in an adult care facility in New York

City was $999 per month in 2004 (and is $1014 per month in 2005).  Out of this monthly

payment, an SSI recipient living in an adult home receives an allowance of $127.00 per month

for his personal needs (increased to $130 per month in 2005).  This rate is set by the New York

State Legislature annually.  The remaining $872 per month is the rate for room, board and

services for an SSI recipient living in an adult care facility ($884 per month in 2005).  Adult

home residents who are recipients of both SSI and SSDI receive an additional $20 per month, for

a total allowance of $147.00 per month (which is $150 per month in 2005 since the SSDI amount

does not change).

38.     The Personal Needs Allowance ("PNA") is a fund made directly available to SSI residents of adult homes for their own use in obtaining clothes, personal hygiene items, and other supplies and services not otherwise provided by the adult home (SSL §131-o(2)). The $127.00 monthly PNA in 2004 (and the $130 per month in 2005) is the only money directly available to SSI recipients living in adult homes and the only part of their monthly SSI payment over which they have any discretion or control in how and when they receive it and how they spend it.

39.     Upon information and belief, all plaintiffs received $127.00 per month in 2004 as their personal needs allowance from SSI.  Those class members who receive SSDI in addition to SSI receive an additional $20 per month for a total of $147.00 per month.  These figures will increase slightly in 2005 as described in Paragraph 37, above.

40.     A representative payee is a person designated by the Social Security Administration to receive a beneficiary's SSI check and to use the money for the benefit of the beneficiary.

41.     Upon information and belief, Oceanview serves as the representative payee for some residents of the facility, including Plaintiff Roberts.

42.     Upon information and belief, because plaintiffs are impoverished and do not have their own bank accounts, plaintiffs who are (or were) their own payees negotiate their monthly checks to Oceanview and maintain accounts with Oceanview for the balance of their monthly checks, which is the amount of their monthly PNA.

43.     Thus, Oceanview controls the distribution of plaintiffs' funds – either as the representative payee of plaintiffs' checks or through the endorsement of the checks by plaintiffs to Oceanview.

44.     As an adult care facility, Oceanview is required to offer a personal allowance account to any resident who is a recipient of SSI.  SSL § 131o(2).  The facility is further required to follow specific procedures for distribution of allowances from such accounts, including distributing them within two banking days after the resident negotiates the check to Oceanview (NYCRR tit. 18 § 487.6(b)(2)) and allowing residents access to their accounts at least four hours per day Monday through Friday. (NYCRR tit. 18 § 487.6(c)(5)).

**Defendants' Illegal Conduct**

45.     Upon information and belief, defendants and their agents and employees distribute allowances from the business office at Oceanview.  Although the hours posted for the business office indicate that it is open from 10:00 AM to 12:00 PM, 2:00 PM to 4:00 PM and 4:00 PM to 5:00 PM Monday through Friday, defendants distribute allowances to plaintiffs only at specific times of the day and allow plaintiffs access to their accounts only at those times. If plaintiffs are not at the home or available to stand on line at the time defendants determine they will receive their allowance, they do not receive their allowance that day.

46.     Upon information and belief, some plaintiffs voluntarily attend continuing day treatment programs.  For those plaintiffs whose receipt of their allowance defendants condition on attendance at a day treatment program, defendants require that they sign a receipt for their allowance in the morning, but do not give them their money until they return from the program.

47.     Upon information and belief, because the business office is not open on the weekend, some plaintiffs sign for receipt of their allowance for Friday, Saturday and Sunday on Friday but receive their allowance for Saturday and Sunday from the person who distributes medication on those days.

**Defendants' Treatment of Plaintiff Cortigiano**

48.     Upon information and belief, from April 2003, when she moved to Oceanview, until April 12, 2004, Plaintiff Cortigiano was her own payee.

49.     Upon information and belief, in February or March 2004, defendants filed an application with the Social Security Administration to become Plaintiff Cortigiano's representative payee.

50.     Upon information and belief, on March 29, 2004, one of defendants' employees asked Plaintiff Cortigiano to sign a form designating Oceanview as her representative payee. Plaintiff Cortigiano refused.

51.     Upon information and belief, on March 30, 2004, another Oceanview employee told Plaintiff Cortigiano that if she did not sign the form, she would not get any money from her account.  Plaintiff Cortigiano signed the form.

52.     Upon information and belief, Defendant Oceanview became Plaintiff Cortigiano's representative payee on April 12, 2004.

53.     Upon information and belief, Plaintiff Cortigiano, as a recipient of both SSI and SSDI, was entitled to a monthly allowance of $144 during 2003 and is entitled to a monthly allowance of $147 during 2004 and $150 in 2005.

54.     Upon information and belief, after Plaintiff Cortigiano moved to Oceanview and established an account for her personal allowance with the home, when she sought to withdraw funds from her account, she was told that she could only receive $35 per week.

55.     Upon information and belief, defendants continued to deny Plaintiff Cortigiano access to the full amount of her monthly personal allowance, distributing it in amounts of $35 per week.

56.     Upon information and belief, defendants and their agents regularly inquired into Plaintiff Cortigiano's expenditures and made her justify her need for more money if she asked for it.

57.     Upon information and belief, Plaintiff Cortigiano requested on many occasions that defendants allow her to have the full amount of her allowance or to withdraw larger sums from it if she needed them.  Plaintiff Cortigiano requested additional funds for such personal expenditures as going to a beauty salon and visiting her son in Staten Island.

58.     Upon information and belief, defendants refused to allow Plaintiff Cortigiano to withdraw more than the amount they had determined she should receive.

59.     Upon information and belief, in January 2004, defendants informed Plaintiff Cortigiano that she was being put on a budget of $5 per day.  Upon information and belief, defendants told Plaintiff Cortigiano that this was in response to her not having attended her day treatment program.

60.     Upon information and belief, defendants required that Plaintiff Cortigiano be at the home at 3:00 PM every day and to wait on line with other residents to receive the PNA defendants disbursed to her on a daily basis.

61.     Upon information and belief, defendants allowed Plaintiff Cortigiano almost no control over her own money.  In order to purchase necessary items or services, Plaintiff Cortigiano had to tell defendants and their agents and employees what she needed and defendants or their agents or employees either went to the store or sent other residents to purchase items for her.  Plaintiff Cortigiano was not given any choice about who made purchases for her.

62.     Upon information and belief, Plaintiff Cortigiano attends a continuing day treatment program at the Institute for Community Living.

63.     Upon information and belief, attendance at this program is voluntary.

64.     Upon information and belief, while Plaintiff Cortigiano lived at Oceanview, defendants' agents and/or employees called Plaintiff Cortigiano's continuing day treatment program to verify that she was there and did not give her her allowance until she returned from her program in the afternoon.

65.     Upon information and belief, defendants did not give Plaintiff Cortigiano her allowance if she did not go to the program.

66.     Upon information and belief, Plaintiff Cortigiano signed for her money in the morning but only received it after she returned from her continuing day treatment program.

67.     In a letter dated February 10, 2004, Plaintiff Cortigiano, through her representatives, MFY Legal Services, demanded that defendants immediately cease to withhold her PNA and to condition her receipt of her PNA on her attendance at a day treatment program and that defendants distribute the full amount of her allowance to her at the beginning of the month.

68.     Upon information and belief, when Plaintiff Cortigiano requested that defendants cease withholding her personal allowance and give her access to the full PNA, defendants, their agents and/or employees threatened that they would file an application to become her representative payee.

69.     Upon information and belief, when Plaintiff Cortigiano told Defendant Rosenfeld that she would establish a direct deposit account rather than signing her SSI check over to Oceanview, he threatened to evict her if she did so.

13

70.     Plaintiff Cortigiano left Oceanview in September 2004.

**Defendants' Treatment of Plaintiff Coughlin**

71.     Upon information and belief, Plaintiff Coughlin has been a resident of Oceanview for 18 years.

72.     Upon information and belief, Plaintiff Coughlin is and at all times relevant to this complaint was her own payee.

73.     Upon information and belief, Plaintiff Coughlin maintains a personal allowance account with Oceanview.

74.     Upon information and belief, until sometime in 2003, Plaintiff Coughlin received her full allowance at the beginning of each month.

75.     Upon information and belief, in 2003, Plaintiff Coughlin told defendants and their agents or employees that she would like to receive her allowance in increments of $15 or $20 at a time.

76.     Upon information and belief, instead of allowing Plaintiff Coughlin to withdraw her allowance in the sums she wanted, defendants, their agents and/or employees put Plaintiff Coughlin on a budget of $3 per day plus one pack of cigarettes.

77.     Upon information and belief, defendants' refusal to give Plaintiff Coughlin her PNA in larger increments results in her having to stand on line to receive her allowance every day.

78.     Upon information and belief, Plaintiff Coughlin suffers from diabetes and arthritis and had to stop attending a day treatment program because she is unable to climb the stairs to get to the program.

79.    Upon information and belief, despite her physical ailments, Plaintiff Coughlin must stand on line for five minutes to twenty-five minutes five days a week to receive her $3 daily allowance.

80.    Upon information and belief, defendants only allow Plaintiff Coughlin to receive her allowance at 10:00 AM and not at any other time of day.

81.    Upon information and belief, when Plaintiff Coughlin has asked to receive more money at a time, defendants' agents and employees have verbally abused her.

**Defendants' Treatment of Plaintiff Ilarraza**

82.    Upon information and belief, Plaintiff Ilarraza has been a resident of Oceanview since before Defendant Rosenfeld became the operator.

83.    Upon information and belief, Plaintiff Ilarraza is and at all times relevant to this Complaint was his own payee.

84.    Upon information and belief, Plaintiff Ilarraza maintains a personal allowance account with Oceanview.

85.    Upon information and belief, Plaintiff Ilarraza used to receive his full PNA at the beginning of the month.

86.    Upon information and belief, several years ago, defendants put Plaintiff Ilarraza on a budget of $25 per week.

87.    Upon information and belief, for the past several months, Plaintiff Ilarraza has received only $15 per week on Friday.

88.    Upon information and belief, Plaintiff Ilarraza does not receive his allowance unless one of defendants' agents or employees confirms that he has showered.

89.     Upon information and belief, on numerous occasions, Plaintiff Ilarraza has stood on line to receive his allowance only to be told when he arrives at the front of the line that he will not receive his allowance that day because he has not showered.

90.     Upon information and belief, Plaintiff Ilarraza has been refused his allowance on occasions when he has in fact showered, but defendants' agents or employees have not confirmed that he has showered.

91.     Upon information and belief, although Plaintiff Ilarraza has more than $800 in his account, he is afraid to ask for his money and believes that defendants would not give it to him if he asked.

**Defendants' Treatment of Plaintiff Reede**

92.     Upon information and belief, Plaintiff Reede has been a resident of Oceanview since December 2002.

93.     Upon information and belief, Plaintiff Reede is and at all times relevant to this Complaint was his own payee.

94.     Upon information and belief, Plaintiff Reede maintains a personal allowance account with Oceanview.

95.     Upon information and belief, defendants condition Plaintiff Reede's receipt of his allowance on his taking a shower.

96.     Upon information and belief, defendants do not allow Plaintiff Reede to withdraw more than $5 per day from his account.

97.     Upon information and belief, Plaintiff Reede signs for $15 on Friday but only receives $5.  Because the business office is closed on weekends, he receives $5 on Saturday and $5 on Sunday from the staff person who dispenses medications.

16

98.     Upon information and belief, although Plaintiff Reede has money in his account, he is afraid to ask for more money when he needs it to make purchases because he is afraid defendants, their agents and/or employees will verbally abuse him.

99.     Upon information and belief, defendants allow Plaintiff Reede very little control over his spending.  When he wants to purchase an item such as a pair of shoes, rather than giving him money from his account to go to the store and buy what he wants, defendants and their agents and/or employees go to the store and purchase the item for him.

**Defendants' Treatment of Plaintiff Roberts**

100.    Upon information and belief, since he moved to Oceanview, Plaintiff Roberts has received only $5 per day of his allowance.

101.    Upon information and belief, prior to moving to Oceanview in October 2003, Plaintiff Roberts had been a resident of another adult home, King Solomon Manor; he moved to Oceanview due to the closure of King Solomon Manor.

102.    Upon information and belief, when he lived at King Solomon Manor and King Solomon Manor was his representative payee, Plaintiff Roberts received his full monthly allowance on the 3rd of the month.

103.    Upon information and belief, Plaintiff Roberts attends a day treatment program and receives mental health services at Federation Employment and Guidance Services ("FEGS"), a licensed mental health provider.

104.    Upon information and belief, defendants condition Plaintiff Roberts' receipt of his allowance on his attendance at a day treatment program.

105.    Upon information and belief, attendance at the FEGS program is voluntary.

106.    Upon information and belief, Plaintiff Roberts has had his allowance withheld on days when he did not attend the program at FEGS.  However, because he is not scheduled to go to his program on Wednesday, he does receive his allowance that day.

107.    Upon information and belief, if Plaintiff Roberts does not attend his day treatment program on Friday, he does not receive any money for the weekend.

108.    Upon information and belief, defendants and their agents and employees inquire whether Plaintiff Roberts has showered and threaten to withhold his allowance if he does not do so.

109.    Upon information and belief, defendants would not give Plaintiff Roberts money from his account to purchase a winter coat when he needed one.

110.    Upon information and belief, when Plaintiff Roberts does need an item of clothing, defendants, their agents and/or employees go to the store for him and purchase items out of his PNA without allowing him any choice.  When Plaintiff Roberts needed summer clothing, rather than giving him money to purchase shirts of his choice, defendants' agents and/or employees went to the store and used Plaintiff Roberts' money to purchase a t-shirt containing an image Plaintiff Roberts found offensive.  He was left with a shirt he did not want and without the funds to purchase a shirt of his choice.

111.    In a letter to Defendant Rosenfeld dated February 10, 2004, Plaintiff Roberts, through his representative MFY Legal Services, demanded that defendants cease their illegal practice of conditioning his receipt of his allowance on his attendance at a day treatment program.  Defendants did not change their practices in response to Plaintiff Roberts' request and have continued to deny him his allowance if he does not attend the program.

18

112.    Upon information and belief, when Plaintiff Roberts exercised his rights by complaining about defendants' actions and omissions, defendants and their agents and employees responded that they would not change their policies and practices, even if plaintiff exercised his right to seek a legal remedy and even if the home had to close as a result.

**Defendants' Treatment of Plaintiff Rosen**

113.    Upon information and belief, Plaintiff Rosen has lived at Oceanview since 1992.

114.    Upon information and belief, Plaintiff Rosen is and at all times relevant to this Complaint has been his own payee.

115.    Upon information and belief, Plaintiff Rosen maintains a personal allowance account with Oceanview.

116.    Upon information and belief, until approximately two years ago, Plaintiff Rosen received his full PNA at the beginning of every month.

117.    Upon information and belief, sometime in 2002 or 2003, one of defendants' employees saw Plaintiff Rosen asking someone for money outside the home.

118.    Upon information and belief, the employee threatened to "take action" if she ever saw him panhandling again.

119.    Upon information and belief, when the employee saw Plaintiff Rosen asking for money another time, defendants and/or their agents and employees told Plaintiff Rosen that he would receive only $5 per day from his allowance.

120.    Upon information and belief, defendants have withheld Plaintiff Rosen's allowance when they have caught him smoking in areas of the facility that are not designated smoking areas.

121.    Upon information and belief, Plaintiff Rosen has asked defendants and/or their agents and employees to give him his full PNA numerous times.  When he has done so, defendants' agents and employees have laughed at him and have refused to give him any more money.

**Defendants' Treatment of Plaintiff Wayne**

122.    Upon information and belief, Plaintiff Wayne has been a resident of Oceanview since 2003.

123.    Upon information and belief, prior to moving to Oceanview, Plaintiff Wayne lived at another adult care facility, King Solomon Manor; he moved to Oceanview due to the closure of King Solomon Manor.

124.    Upon information and belief, Plaintiff Wayne is and at all times relevant to this Complaint has been his own payee.

125.    Upon information and belief, Plaintiff Wayne maintains a personal allowance account with Oceanview.

126.    Upon information and belief, when Plaintiff Wayne lived at King Solomon Manor, he received his full PNA at the beginning of each month.

127.    Upon information and belief, since he moved to Oceanview, Plaintiff Wayne has received his allowance in increments of $10 on Mondays, Wednesdays and Fridays.

128.    Upon information and belief, Plaintiff Wayne attends a day treatment program at FEGS.

129.    Upon information and belief, Plaintiff Wayne does not receive his allowance if he does not attend the day treatment program, does not shower when defendants want him to, or does not change his clothes when defendants want him to.

20

130.     Upon information and belief, one of defendants' employees checks the shower in Plaintiff Wayne's room to see if it is wet in order to confirm that he has showered before he can receive his allowance.

131.     Upon information and belief, defendants and their agents and/or employees have on numerous occasions called Plaintiff Wayne into the business office and told him that he would not receive his allowance that day.

132.     Upon information and belief, although Plaintiff Wayne often has money left in his account at the end of the month as a result of his allowance having been withheld during the month, defendants and their agents and employees refuse to give him the balance that is left when he asks for it at the end of the month.

133.     Defendants have violated plaintiffs' rights in violation of federal and state laws.

## AS AND FOR A FIRST CAUSE OF ACTION BASED ON VIOLATION OF 29 U.S.C. § 794, SECTION 504 OF THE REHABILITATION ACT

134.     Plaintiffs repeat and re-allege paragraphs 1 through 133 as if fully set forth herein.

135.     Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794 *et seq.*, provides that "[n]o otherwise qualified individual with a disability" shall "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a).

136.     Plaintiffs have mental impairments that constitute or result in substantial impediments to employment and/or mental impairments that substantially limit one or more major life activities. Plaintiffs are therefore qualified individuals with disabilities under Section 504 of the Rehabilitation Act.

137.    Because Defendant Oceanview is a corporation, partnership, or other private organization or an entire sole proprietorship which is primarily engaged in the business of providing housing, all of its operations constitute a "program or activity" under 29 U.S.C. § 794(b)(3)(A).

138.    Defendant Oceanview is a private entity to which federal assistance is extended in the form of SSI and SSDI payments.  Defendant Oceanview is therefore a recipient of federal financial assistance as defined in 29 U.S.C. § 794(b)(3)(A).

139.    Defendant Rosenfeld, as operator of Oceanview, is a person to whom federal assistance is extended in the form of SSI and SSDI payments.  Defendant Rosenfeld is therefore a recipient of federal financial assistance as defined in 29 U.S.C. § 794(b)(3)(A).

140.    Defendants are subject to the nondiscrimination requirements of Section 504 of the Rehabilitation Act.

141.    Defendants' policies and practices deny plaintiffs the benefits of a program or activity by improperly withholding personal needs allowances to which plaintiffs are entitled from plaintiffs' SSI checks.

142.    Defendants' policies and practices limit plaintiffs' access to benefits by conditioning plaintiffs' receipt of their statutorily mandated personal needs allowance on the performance of specific activities.

143.    Defendants have failed and continue to fail to make reasonable accommodations for plaintiffs' disabilities by refusing to provide adequate and appropriate supervision, case management and personal care services to aid plaintiffs with money management, treatment compliance, and personal hygiene issues arising from their disabilities.  Instead, defendants resort to punitive and coercive measures to force plaintiffs to comply with defendants' rules.

144.    Defendants and their agents and employees discriminate against plaintiffs by reason of their disabilities by subjecting them to ongoing humiliating, degrading and abusive treatment.

145.    As a result of defendants' actions and omissions, plaintiffs have been and continue to be injured and have suffered damages.

## AS AND FOR A SECOND CAUSE OF ACTION BASED ON VIOLATION OF 42 U.S.C. § 12101 *et seq.*, AMERICANS WITH DISABILITIES ACT

146.    Plaintiffs repeat and re-allege paragraphs 1 through 145 as if fully set forth herein.

147.    The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, was enacted to provide a legal redress to all disabled individuals who suffer discrimination by, *inter alia*, being relegated to lesser services, benefits, programs or other opportunities based on the fact that they are disabled.

148.    Title III of the ADA and its implementing regulations prohibit, *inter alia*, discrimination against any individual based on his/her disability by any person who owns, leases or leases to, or operates a place of public accommodation.

149.    Upon information and belief, Oceanview is a facility operated by a private entity whose operations affect commerce.  Oceanview provides lodging and contains more than five rooms for rent.  Oceanview constitutes a public accommodation under Title III and its implementing regulations. 28 C.F.R. § 36.104.

150.    Defendant Oceanview is subject and at all times relevant to this Complaint was subject to the nondiscrimination requirements of Title III of the ADA and its implementing regulations.

151.    Upon information and belief, Defendant Rosenfeld owns and operates Oceanview.  Defendant Rosenfeld constitutes a private entity under Title III of the ADA and its

implementing regulations because he is a person or entity other than a public entity and he owns, leases (or leases to), or operates a place of public accommodation. 28 C.F.R. § 36.104.

152.    Defendant Rosenfeld is subject and at all times relevant to this Complaint was subject to the nondiscrimination requirements of Title III of the ADA and its implementing regulations.

153.    All plaintiffs suffer, and at all times relevant to this Complaint suffered, from mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

154.    There is, and at all times relevant to this Complaint was, a record of plaintiffs' mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

155.    Upon information and belief, all defendants regard, and at all times relevant to this Complaint regarded, plaintiffs as having mental disabilities that constitute or result in a substantial limitation in one or more major life activities.

156.    Upon information and belief, plaintiffs constitute qualified individuals with disabilities pursuant to Title III of the ADA and its implementing regulations, and at all times relevant to this Complaint, constituted qualified individuals with disabilities pursuant to Title III of the ADA and its implementing regulations.

157.    Defendants knew or should have known that plaintiffs had mental disabilities.

158.    Defendants discriminated against plaintiffs based on their disability by imposing improper terms and conditions on plaintiffs' receipt of benefits and services.

159.    Defendants have failed and continue to fail to make a reasonable accommodation for plaintiffs' disabilities by failing to provide adequate and appropriate supervision, case

24

management and personal care services to aid plaintiffs with money management and personal hygiene issues arising from their disabilities rather than using punitive and coercive measures. Under New York's Social Services Law and the implementing regulations and under the admissions agreements in effect between plaintiffs and defendants, defendants are required to provide services to aid plaintiffs with activities of daily living, including monitoring and guidance to assist plaintiffs in the performance of basic money management (NYCRR tit. 18 § 487.7(d)(1)(iv)(d)) and in the performance of personal hygiene and grooming activities (NYCRR tit. 18 § 487.7(d)(1)(iv)(b)).

160.   Defendants have discriminated and continue to discriminate against plaintiffs based on their disabilities by subjecting them to humiliating, degrading and abusive treatment.

## AS AND FOR A THIRD CAUSE OF ACTION BASED ON VIOLATION OF NEW YORK SOCIAL SERVICES LAW § 131-o

161.   Plaintiffs repeat and re-allege paragraphs 1 through 160 as if fully set forth herein.

162.   New York Social Services Law § 131-o(1)(b) provides that each individual receiving residential care and who is receiving benefits under the program for additional state payments is entitled to receive a PNA.  In 2002, the statutorily mandated PNA was $122.00 per month; in 2003, it was $124.00 per month; in 2004, it was $127.00 per month; in 2005, it is $130.00 per month.

163.   Adult home operators are required to make the PNA directly available to SSI recipients living in their home for the recipient's own use in obtaining clothes, personal hygiene items, and other supplies and services for his personal use not otherwise provided by the residential facility.  SSL § 131-o(2).

164.   Any waiver of the right to a personal allowance by an individual entitled to it is void. *Id.*

25

165.    Under SSL § 131-o(3), "[a]ny individual who has not received or been able to control personal allowance funds to the extent and in the manner required by this section may maintain an action in his own behalf for recovery of any such funds, and upon a showing that the funds were intentionally misappropriated or withheld to other than the intended use, for recovery of additional punitive damages in an amount equal to twice the amount misappropriated and withheld."

166.    Defendants have violated SSL § 131-o by failing to make plaintiffs' PNA available to them, by not giving plaintiffs control over their money for their own use and by intentionally withholding plaintiffs' PNA as punishment for not attending a continuing day treatment program, for not showering, or for breaking the home's rules.

167.    Plaintiffs are entitled to recover the PNA monies withheld from them.

168.    Plaintiffs are entitled to double punitive damages under SSL § 131-o(3) in an amount to be determined due to defendants' intentional withholding of their personal allowances.

## AS AND FOR A FOURTH CAUSE OF ACTION BASED ON BREACH OF CONTRACT

169.    Plaintiffs repeat and re-allege paragraphs 1 through 168 as if fully set forth herein.

170.    Under SSL § 461-c, defendants are required to execute an admission agreement with every applicant for admission.  Plaintiffs signed or should have signed an admission agreement with defendants Oceanview and Rosenfeld at the time of their admission, stating, *inter alia*, that defendants must abide by New York's Social Services Law and the implementing regulations and treat residents in accordance with the rights and protections afforded thereunder.

171.    Under the admission agreement between defendants and plaintiffs, defendants are required to provide specific services, including supervision, case management and personal care, to plaintiffs.

26

172.    The New York Social Services Law accords residents of adult care facilities specific rights as residents of such facilities.  SSL § 461-d(3) provides that resident rights and responsibilities shall include, but not be limited to:

(a)  "the right to independent personal decisions and knowledge or available choices." The facility has the responsibility to "encourage and assist [the residents] in the fullest possible exercise of these rights."  SSL § 461-d(3)(a).

(b)  the right to present grievances on behalf of himself or herself or others to the facility's staff or administrator, to governmental officials, or to any person without fear of reprisal.  SSL § 461-d(3)(c).

(c)  the right to manage his or her own financial affairs.  SSL § 461-d(3)(d).

(d)  the right to have privacy in treatment and caring for personal needs.  SSL § 461-d(3)(e).

(e) the right to have privacy in the treatment of personal, social, financial and medical records, and security in storing personal possessions.  SSL § 461-d(3)(f).

(f) the right to receive courteous, fair and respectful care and treatment.  SSL § 461-d(3)(g).

173.    Defendants have violated SSL § 461-d(3)(a) and breached their admissions agreements with plaintiffs by not allowing plaintiffs any choice in how they receive and spend their money.  Further, they have failed to encourage and assist plaintiffs in the fullest exercise of their rights to independent personal decisions by controlling their personal funds in ways that limit, rather than increase, their independence.  Defendants have a duty to provide case management services to plaintiffs, which include "such case management services as are

27

necessary to support the resident in maintaining independence of function and personal choice."
NYCRR tit. 18 § 487.7(g)(2).

174.    Defendants have violated SSL § 461-d(3)(c) by threatening plaintiffs when they
exercised their rights to present grievances.  Plaintiffs Cortigiano and Roberts were verbally
threatened when they asked the home to cease its practice of withholding their allowances or
placing conditions on their receipt of their allowances.

175.    Defendants have violated SSL § 461-d(3)(d) by refusing to allow plaintiffs who
are their own representative payees to manage their own finances and by not allowing plaintiffs
any autonomy in how their money is distributed or spent.  Further, defendants have not provided
plaintiffs any help in developing money management skills but have exerted control over their
money in a coercive and punitive way.  Under NYCRR tit. 18 § 487.7(a), the operator of an adult
home is required to provide supervision and case management.  Supervision services include
"monitoring and guidance to assist residents in performing basic activities of daily living"
(NYCRR tit. 18 § 487.7(d)(iv)), including performance of basic money management (NYCRR
tit. 18 § 487.7(d)(1)(iv)(d)).

176.    Defendants have violated and continue to violate SSL § 461-d(3)(e) by  failing to
maintain plaintiffs' privacy regarding treatment by calling plaintiffs' day treatment programs or
inquiring into plaintiffs' attendance at the programs and by publicly inquiring about issues
related to plaintiffs' personal care.

177.    Defendants have violated and continue to violate SSL § 461-d(3)(f) by failing to
respect plaintiffs' privacy in their financial matters by making their budgeting practices and the
conditions they attach to plaintiffs' receipt of their allowances public. Defendants distribute
allowances in a very public area of the facility, make plaintiffs stand on line at a specified time to

receive their money, and make comments to plaintiffs about the conditions attached to their receipt of their money within earshot of other residents.

178.   Defendants have violated SSL § 461-d(3)(g) by subjecting plaintiffs to humiliating and degrading treatment by publicly inquiring whether they have taken showers and having their agents and employees verify that plaintiffs have taken showers by opening the doors to their rooms or inspecting their bathrooms after plaintiffs have showered.

179.   Further, defendants have breached their admissions agreements with plaintiffs by violating the implementing regulations of the Social Services Law regarding when resident accounts must be available.  NYCRR tit. 18 § 487.6(b)(2) provides that "[i]n the event that the resident negotiates the full SSI . . . check to the operator, distribution of the personal allowance account shall be made to the resident within two banking days of the transaction."  Defendants violated § 487.6(b)(2) with respect to plaintiffs who are or were their own representative payees and who negotiated their checks to defendants by distributing their personal needs allowances in a piecemeal fashion over the course of the month rather than making the full amount available to them within two banking days of their negotiating their checks to the home.

180.   Pursuant to NYCRR tit. 18 § 487.6(c)(5), "[r]esidents shall have access to personal allowance accounts at least four hours daily, Monday through Friday."  Defendants have violated NYCRR tit. 18 § 487.6(c)(5) by allowing plaintiffs access to their accounts only at specified hours of the day and for less than four hours a day.  Defendants' practice requiring that plaintiffs be at Oceanview to stand on line for their allowances at a specific time of day limits their independence and choice by restricting their ability to travel outside the home.

181.   Defendants' case management responsibilities further include assisting each resident to maintain family and community ties and to develop new ones (NYCRR tit. 18 §

487.7(g)(iv)) and encouraging resident participation in facility and community activities (NYCRR tit. 18 § 487.7(g)(v)).  Defendants' policies and practices limit, rather than encourage and assist plaintiffs in maintaining family and community ties and participating in community activities by limiting their ability to travel, to make telephone calls, and to take part in activities outside the home, including shopping, eating out, and any other activities that require spending money.  In some instances, defendants do not even give plaintiffs the ability to go out and make their own purchases, but instead make the purchases for them or have other residents do so.

182.    Defendants have breached their admissions agreements with plaintiffs by violating New York Social Services Law § 461(d) and implementing regulations.  Plaintiffs have been and continue to be injured by defendants' breach and have suffered and continue to suffer damages.

## AS AND FOR A FIFTH CAUSE OF ACTION BASED ON BREACH OF FIDUCIARY DUTY

183.    Plaintiffs repeat and re-allege paragraphs 1 through 182 as if fully set forth herein.

184.    Defendants offer residents of their facility the option of maintaining an account with the facility.  By maintaining such accounts for plaintiffs and acting as the representative payee for plaintiffs Cortigiano and Roberts, defendants owe plaintiffs a duty to act in good faith, trust and candor towards them.

185.    New York Social Services Law § 461-d(6) specifies that "[a]n operator or employee of a residence for adults, adult home … or any other entity which is a representative payee of a resident of such facility pursuant to designation by the social security administration or which otherwise assumes management responsibility over the funds of a resident shall maintain such funds in a fiduciary capacity to the resident."

30

186.   Defendants have violated this fiduciary duty by withholding plaintiffs' money, by refusing to give plaintiffs control over their money, by arbitrarily changing the terms under which plaintiffs receive funds from their PNA, and by disbursing plaintiffs' PNA in a punitive and coercive manner rather than for plaintiffs' benefit.

187.   Plaintiff's have been and continue to be injured by defendants' breach and have suffered and continue to suffer damages.

## AS AND FOR AN SIXTH CAUSE OF ACTION BASED ON VIOLATION OF EXECUTIVE LAW ARTICLE 15 NEW YORK STATE HUMAN RIGHTS LAW

188.   Plaintiffs repeat and re-allege paragraphs 1 through 187 as if fully set forth herein.

189.   New York's Human Rights Law, N.Y. EXEC. LAW § 290 *et seq.,* (McKinney 2004), was enacted to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" and to address "the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care." N.Y. EXEC. LAW § 290(3).

190.   Plaintiffs are individuals with disabilities as defined in N.Y. EXEC. LAW § 292(21). Plaintiffs have a mental impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques; and/or a record of such an impairment; and/or a condition regarded by others as such an impairment.

191.   New York's Human Rights Law prohibits unlawful discriminatory practices by the "owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof." N.Y. EXEC. LAW § 296(5)(a).

31

192.    Defendant Oceanview is a "housing accommodation" as defined in the Human Rights Law.  N.Y. EXEC. LAW § 292(10).

193.    Defendant Rosenfeld, as the operator of Oceanview, is a person having the right to sell, rent or lease a housing accommodation and is therefore subject to the non-discrimination requirements of the Human Rights Law.  NYS Executive Law § 296(5)(a).

194.    New York's Human Rights Law provides that it shall be an unlawful discriminatory practice "[t]o discriminate against any person because of ... disability ... in the terms, conditions or privileges of sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."  N.Y. EXEC. LAW § 296(5)(a)(2).

195.    Defendants provide housing accommodations to plaintiffs and furnish services to plaintiffs in conjunction with their housing.

196.    Defendants discriminated against plaintiffs in the furnishing of services in connection with a housing accommodation by imposing conditions on their receipt of services.

197.    As a result of defendants' acts and omissions, plaintiffs have been and continue to be injured and have suffered and continue to suffer damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION BASED ON VIOLATION OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

198.    Plaintiffs repeat and re-allege paragraphs 1 through 197 as if fully set forth herein.

199.    The civil rights provisions of the Administrative Code of the City of New York (N.Y.C. Admin. Code § 8-101 *et seq.*) were enacted to eliminate prejudice, intolerance, bigotry, and discrimination and bias-related violence and harassment.  N.Y.C. Admin. Code § 8-101.

200.    Under N.Y.C. Admin. Code § 8-107(5), it is an unlawful discriminatory practice "[t]o discriminate against any person because of such person's actual or perceived ... disability ... in the terms, conditions or privileges of the sale, rental or lease of any such housing

32

accommodation or an interest therein or in the furnishing of facilities or services in connection therewith."

201.    Oceanview is designed to be occupied as a home, residence or sleeping place of one or more human beings and is therefore a housing accommodation as defined by the N.Y.C. Admin. Code § 8-102(10).

202.    Plaintiffs all have mental or psychological impairments, and/or a history or record of such impairments and are therefore people with disabilities as defined by N.Y.C. Admin. Code § 8-102(16)(a).

203.    Defendants discriminated against plaintiffs in the furnishing of services in connection with a housing accommodation by imposing conditions on their receipt of services and by limiting plaintiffs' access to services.

204.    Defendants knew or should have known that plaintiffs have disabilities.

205.    Defendants failed to make reasonable accommodations for plaintiffs' disabilities as required by N.Y.C. Admin. Code § 8-107(15)(a) by refusing to provide appropriate supervision, case management and personal care services to aid plaintiffs with money management, treatment compliance, and personal hygiene issues arising from plaintiffs' disabilities and instead resorting to punitive and coercive measures.

206.    As a result of defendants' actions and omissions, plaintiffs were injured and suffered damages.

## RELIEF REQUESTED

WHEREFORE, plaintiffs, on their own behalf and on behalf of all those class members similarly situated, respectfully request that this Court issue:

(A) An Order pursuant to Fed. R. Civ. P. 23 (c)(1) certifying this lawsuit as a class action;

(B) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under Section 504 of the Rehabilitation Act and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(C) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under Title III of the Americans with Disabilities Act and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(D) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of their rights under NYS Executive Law § 296 and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(E) Judgment against the defendants declaring that they discriminated against plaintiffs in violation of the Administrative Code of the City of New York and enjoining defendants from discriminating against plaintiffs in violation of these rights;

(F) Judgment against the defendants declaring that defendants' practice of denying plaintiffs who are or were their own payees their full PNA or in an amount the recipient requests from his or her account is a violation of SSL § 131-o and enjoining them from continuing this practice;

(G) Judgment against the defendants enjoining them from placing conditions on plaintiffs' receipt of their PNA;

(H) Judgment against the defendants ordering defendants' specific performance of their obligations under plaintiffs' admissions agreements, including their obligation to provide case management, supervision, and personal care services to plaintiffs as necessary;

34

(I)  Judgment awarding plaintiffs compensatory damages in an amount to be determined at trial;

(J)  Judgment awarding plaintiffs punitive damages in an amount to be determined at trial;

(K)  Costs and disbursements to attorneys for plaintiffs;

(L)  Attorneys' fees to attorneys for plaintiffs, MFY Legal Services, Inc. and Pillsbury Winthrop Shaw Pittman LLP;

(M)  Other relief as the court deems just and proper in favor of plaintiffs and the proposed class.

Dated: New York, New York
       April 25, 2005

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: _____
    Susan J. Kohlmann (SK-1855)
    Karen B. Dine (KD-0546)
    David Keyko (DK-3386)
    Carolina A. Fornos (CF-6689)
    Nancy V. Thornton (NT-5325)
    1540 Broadway
    New York, NY  10036
    (212) 858-1000

MFY LEGAL SERVICES, INC.
Lycette Nelson (LN-5606)
Jeanette Zelhof (JZ-0639)
Of Counsel to Lynn Kelly
299 Broadway
New York, NY 10007
(212) 417-3717

TO:  Neil B. Ptashnik
Theresa Scotto-Lavino
Ptashnik & Associates
67 Wall Street, Suite 2410
New York, New York 10005